UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff<br><br>v.<br><br>**REAL PROPERTY KNOWN AS<br>615 ELMHURST<br>SUGAR LAND, TEXAS 77479**<br>Defendant | § § § § § § § § § | CIVIL CASE NO. C-18-CV-5 |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, the United States of America, by and through its United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, represents:

### NATURE OF ACTION

1.  This is a civil forfeiture action in rem brought under: (a) 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or any property traceable to such property; (b) 18 U.S.C. § 981(a)(1)(B)(iii) which provides for the forfeiture of any property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, or any property used to facilitate such an offense, if the offense would be punishable under the laws of the United States by imprisonment for a term exceeding 1 year, if the act or activity constituting the offense had occurred within the jurisdiction of the United States; and (c) 18 U.S.C. §981(a)(1)(C), which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section

1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. This court has *in rem* jurisdiction over Defendant Property under 28 U.S.C. § 1355(b) and §1355(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## DEFENDANT PROPERTY

3. The defendant is real property located at 615 Elmhurst, Sugar Land, Texas 77479, with all appurtenances, improvements, and attachments thereon, legally described as:

LOT THIRTY (30), IN BLOCK ONE (1), OF TELFAIR, SECTION TWENTY (20), A SUBDIVISION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER PLAT NO(S). 20080193, OF THE MAP RECORDS OF FORT BEND COUNTY, TEXAS, ALSO KNOWN AS: 615 ELMHURST CT., SUGAR LAND, TEXAS 77479,

which description is incorporated herein by reference and hereafter referred to as the "Defendant Real Property."

4. The record owner of the Defendant Real Property is PHANTOM INTERNATIONAL INVESTMENTS (hereinafter referred to as "PHANTOM").

5. The Defendant Real Property is located within this district and within the jurisdiction of the Court.

## FACTS

6. Jose Manuel SAIZ-Pineda ("SAIZ-Pineda") was the Secretary of Administration and Finance for Tabasco from January, 2007 through December, 2012. Prior to his appointment as the Secretary of Administration and Finance, SAIZ-Pineda was employed at various companies in the private sector where worked alongside co-conspirator Martin Alberto MEDINA-Sonda

("MEDINA-Sonda"). During his tenure in the private sector, SAIZ-Pineda provided consultation to various states and municipalities in Mexico, affording him the opportunity to experience government service and become acquainted with the eventual Governor of Tabasco, Andres Grainer Melo ("Grainer"). Granier entered office as the Governor of the state of Tabasco in January, 2007. SAIZ-Pineda assumed his government position as Secretary of Administration and Finance for the state of Tabasco at the same time and was appointed by Granier.

7. As the Secretary of Administration and Finance for the state of Tabasco, SAIZ-Pineda earned an annual salary of approximately $80,000 USD. The income for high-ranking state officials in Tabasco does not exceed $150,000 USD annual salary. For six years, at the highest pay grade of state government, the most income that SAIZ-Pineda could have legitimately earned would have been approximately $900,000 USD.

8. In late 2012, the federal prosecutor's office, Procuraduria General de la Republica ("PGR") of Mexico, and the Tabasco Attorney General's Office (Fiscalia General Del Estado "FGE") initiated an investigation regarding the state debt of Tabasco, which had risen to over one billion pesos (approximately $100 million USD) during the tenure of the Granier administration. According to the new administration, there are state funds that are unaccounted for that equal an equivalent of approximately $190 million USD.

9. SAIZ-Pineda, along with his co-conspirators, created offshore personal holding companies, trusts, and domestic shell companies to facilitate entry of proceeds into the United States financial system. SAIZ-Pineda, along with his co-conspirators, used the shell companies to establish investment accounts at various financial institutions in the United States. Funds from the United Mexican States, as well as Singapore, were then transferred into the investment accounts in an attempt to legitimize proceeds derived from the theft of state funds from Tabasco.

10. Information in this investigation has been received as a result of a Mutual Legal Assistance Treaty (MLAT) from the state of Tabasco, as well as from various financial institutions, title companies, and open sources. Analysis of the information led to the discovery of the Defendant Property.

11. SAIZ-Pineda ended his government tenure as the Secretary of Finance and Administration on December 31, 2012. On May 22, 2013, approximately 88,560,134 Mexican pesos (approximately $8 million USD) was seized by Mexican authorities from a residence associated with Marlis Cupil-Lopez, the former secretary of SAIZ-Pineda. This seizure led to the execution of a search warrant at the office of SAIZ-Pineda, located at Sanchez Magallanes #1113, Villahermosa, Tabasco, where authorities subsequently seized documentation corroborating the money laundering scheme.

12. On May 30, 2013, the U.S. visas of SAIZ-Pineda and Granier were revoked at the request of Mexican authorities due to flight risk regarding their ongoing investigation. On June 8, 2013, SAIZ-Pineda was stopped at the Pharr, Texas Port of Entry by the Department of Homeland Security. SAIZ-Pineda was denied entry into the United States and returned to Mexico, where he was arrested by Mexican authorities and charged with illegal enrichment.

13. On June 11, 2013, the U.S. visa of Silvia Beatriz PEREZ-Ceballos ("PEREZ-Ceballos"), the wife of SAIZ-Pineda, was revoked at the request of Mexican authorities, and SAIZ-Pineda was publically implicated in the public corruption investigation being conducted by the state of Tabasco. On or about June 24, 2013, Granier was taken into custody on charges of money laundering and tax evasion.

14. In October, 2014, MEDINA-Sonda was arrested in Quintana Roo, Mexico, on charges of kidnapping his three minor children. While incarcerated, in December, 2014, MEDINA-Sonda was additionally charged by Mexican authorities with money laundering

stemming from a money seizure that occurred in November, 2007 and was convicted of the money laundering charges in April 2017 and sentenced to 12 years imprisonment. MEDINA-Sonda is also alleged to have plotted the murder of his former wife in March 2017. To date, both SAIZ-Pineda and Granier remain incarcerated in Tabasco while awaiting adjudication.

15. Defendant Real Property was purchased during and in furtherance of the money laundering scheme. On May 13, 2011, PHANTOM INTERNATIONAL INVESTMENTS ("PHANTOM"), a limited liability company was established in the state of Florida by Jose LATOUR ("LATOUR"), who was also designated as Manager of PHANTOM. On or about December, 15, 2011, LATOUR, acting on behalf of PHANTOM, entered into contract for the purchase of the Defendant Real Property. The final purchase price was $1,328,612.00, and occurred as an all-cash transaction.

16. LATOUR was identified as a passenger in the vehicle when SAIZ-Pineda was detained while attempting to enter the United States from Mexico via the Pharr, Texas Port of Entry on June 8, 2013. Enrique MARICHAL ("MARICHAL") has been identified as a real estate agent based in Miami, Florida. MARICHAL facilitated the purchase Defendant Real Property and the purchase additional properties on behalf of SAIZ-Pineda located in New York, California, and Florida.

17. A breakdown of the payments received was listed as follows:

1) 12/15/2011 – Initial Earnest Money/Check #470/$5,000.00; payment of $5,000.00, made by check #470, drawn from personal account #XXXX0892 at HSBC Bank, held by MARICHAL. Above MARICHAL's name at the top of the check was a handwritten note, "PHANTOM INTERNATIONAL" and "615 Elmhurst." The memo portion of the check stated: 615 Elmhurst Court/Earnest Money Deposit.

2) 04/16/2012 – Additional Deposit/Check #1001/$200,174.00; payment of $200,174.00 USC was made by check #1001, drawn from account #XXXXX1413, held by PHANTOM INTERNATIONAL INVESTMENTS, at Wells Fargo Bank. The address for PHANTOM on the check was listed as 4500 Biscayne Blvd Suite

300, Miami, Florida, the same business address used by LATOUR. The memo portion of the check stated: 20% of Lot 30 Build.

3) 09/10/2012 - Additional Deposit/Check #1158158600/$23,637.00; payment of $23,637.00 USC was made by bank check #XXXX8600, drawn from Wells Fargo Bank. No account number was provided, but information for LATOUR, 4500 Biscayne Blvd Suite 300, Miami, Florida, was in the upper left hand corner of the check.

4) 09/14/2012 – Additional Deposit/Wire/$144,427.00; payment of $144,427.00 USC was received via incoming wire transfer from PHANTOM.

5) 12/31/2012 – Additional Deposit/Wire/$964,934.01; final payment to close on the property was received via incoming wire transfer from account #xxxxxxxxx1413, at Wells Fargo Bank, held by PHANTOM INTERNATIONAL INVESTMENTS, 4500 Biscayne Blvd Suite 300, Miami, Florida.

18. The final closing on the Defendant Real Property occurred as SAIZ-Pineda concluded his government tenure, on December 31, 2012.

19. Further tracing analysis by federal law enforcement agents evidence that Defendant Real Property was purchased utilizing funds that were wire transferred from Mexico to accounts controlled by LATOUR. LATOUR, along with MARICHAL, conducted the purchase of the residence. The final purchaser of the residence was PHANTOM INTERNATIONAL INVESTMENTS, a Florida limited liability company created and managed by LATOUR.

20. On November 21, 2014, federal agents conducted surveillance of the Defendant Real Property. Agents observed a silver Cadillac Escalade, bearing Florida license plate XXX-YQX, parked in the driveway of the residence. The registered owner of the vehicle was listed as MINELO ACQUISITIONS, 4500 Biscayne Blvd, Suite 310, Miami, Florida (business address used by LATOUR). A previous registration from 4/30/2010-6/30/2011 showed the same registered owner, but with an address of 10090 Bay Harbor Terrace, Bay Harbor Island, Florida (address associated with MARICHAL).

21. MINELO ACQUISITIONS is a limited liability company, incorporated in the state of Florida on July 28, 2009. On April 25, 2011, LATOUR became the registered agent and

6

manager for MINELO ACQUISITIONS. The registered agent changed in 2013, but filings on April 22, 2014 revealed LATOUR remained manager.

22.     On April 26, 2017, a federal grand jury in the Southern District of Texas, Corpus Christi, Texas, returned a true bill indictment for SAIZ-Pineda, PEREZ-Ceballos, and MEDINA-Sonda. They were charged in a two count indictment with a money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h) and a bank fraud conspiracy, in violation of Title 18, United States Code, Sections 1344 and 1349. In addition to the criminal indictment, criminal forfeiture included seven real properties, to include the Defendant Property, six financial accounts, and a personal money judgment for $50 million USD. In October 2017, PEREZ-Ceballos was convicted of a bank fraud conspiracy after a federal jury trial. SAIZ-Pineda and MEDINA-SONDA remain in custody in Mexico.

23.     During the jury trial in PEREZ-Ceballos case, PEREZ-Ceballos testified that, although she resided at the Defendant Real Property, it was not her house. PEREZ-Ceballos further testified that she did not pay for the purchase of Defendant Real Property, nor did she ever pay for utility bills, cable bills, or flood insurance for Defendant Real Property. Further, the government has obtained evidence that PEREZ-Ceballos repeatedly did not disclose the fact that she resided at Defendant Real Property to any banking personnel, her children's school, or to any governmental entity from 2012 until her arrest in 2017.

24.     Also during the jury trial in PEREZ-Ceballos case, LATOUR and MARICHAL testified that Defendant Real Property belonged to SAIZ-Pineda and PEREZ-Ceballos. LATOUR identified his role in SAIZ-Pineda's money laundering scheme as the "wallet," acting as the person who paid expenses through the use of shell companies so that SAIZ-Pineda and PEREZ-Ceballos names would not appear on documentation. LATOUR testified that he acted as the "wallet" for multiple real property transactions, including Defendant Real Property, and

numerous other expenses on behalf of SAIZ-Pineda, all during SAIZ-Pineda's time in public office. LATOUR testified that after SAIZ-Pineda's arrest, LATOUR continued to hide assets for SAIZ-Pineda, including millions of dollars in personal assets and real properties. LATOUR also sent multiple bulk cash deliveries to Houston, Texas for the benefit of PEREZ-Ceballos after SAIZ-Pineda's arrest.

25. To date, Defendant Real Property continues to be held in the name of PHANTOM. According to information received from the Fort Bend County Tax Assessor, the most current payment for property taxes was received on December 28, 2016. The payment was drawn from a business account held by LATOUR.

## NOTICE TO ANY POTENTIAL CLAIMANTS

YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Real Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claims must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

PRAYER

WHEREFORE, the United States of America prays that judgment of forfeiture be entered against the Defendant Property in favor of the United States of America and for such costs and other relief to which the United States of America may be entitled.

                              Respectfully submitted,

                              ABE MARTINEZ
                              Acting United States Attorney

By:   s/ Julie K. Hampton
        JULIE K. HAMPTON
        Assistant United States Attorney
        State Bar No. 24032269
        Federal Bar No. 431286
        800 N. Shoreline Blvd., Suite 500
        One Shoreline Plaza
        Corpus Christi, Texas 78401
        (361) 888-3111

## VERIFICATION

I, Patricia Trevino, a special agent with Drug Enforcement Administration, hereby affirm and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and correct to the best of my knowledge and belief.

_____
Patricia Trevino
Special Agent, DEA

Sworn and subscribed before me, the undersigned authority, on this __4__ day of January, 2018.

_____
Notary Public in and for the State of Texas

My commission expires: 09/24/2020

[Notary Seal: JOANN ANDREA LOPEZ, NOTARY PUBLIC, STATE OF TEXAS, ID#129137637, EXPIRES 9-24-2020]



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem was mailed via certified mail, return receipt requested to:

1. JOSE MANUEL SAIZ-PINEDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs.
2. MARTIN ALBERTO MEDINA-SONDA, via Mutual Legal Assistance Treaty request, through the Department of Justice-Office of International Affairs.
3. SILVIA BEATRIZ PEREZ-CABALLOS, through attorney F. Andino Reynal, The Esperson Building, 808 Travis, Suite 1553, Houston, Texas 77002.
4. Celso Perez-Ceballos, 2706 Lytham, Sugarland, Texas 77479.
5. Jose Latour, though attorney Mark Shapiro, 1 SE 3rd Avenue #28, Miami, FL 33131.
6. Phantom International Investments, LLC, 4500 Biscayne Blvd., Miami, FL 33137.

on this the 5th day of January, 2018.

                                                        s/ Julie K. Hampton
                                                        JULIE K. HAMPTON
                                                        Assistant United States Attorney